**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**VANDERBILT MINERALS, LLC,**

                                                            **Plaintiff,**

          **vs.**                                                    **1:18-CV-105**
                                                                      **(MAD/ML)**

**SUB-TECHNICAL, INC.,**

                                                            **Defendant.**

---

**APPEARANCES:**                                    **OF COUNSEL:**

**SUGARMAN LAW FIRM LLP –**               **BRIAN SUTTER, ESQ.**
**BUFFALO OFFICE**                                 **SAMUEL M. VULCANO, ESQ.**
1600 Rand Building                                  **BRITTANY LEE HANNAH, ESQ.**
14 Lafayette Square
Buffalo, New York 14203
Attorneys for Plaintiff

**AHMUTY, DEMERS LAW FIRM –**           **PATRICK J. PICKETT, ESQ.**
**ALBERTSON OFFICE**
200 I.U. Willets Road
Albertson, New York 11507
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

    Plaintiff Vanderbilt Minerals, LLC ("Plaintiff") commenced this action against Sub-

Technical, Inc. ("Defendant") in state court on December 19, 2017, alleging breach of contract,

negligence, breach of warranty, and negligent misrepresentation.  *See* Dkt. No. 2.  Plaintiff seeks

monetary compensation for damages allegedly caused by or related to work Defendant performed.

*See id*. at ¶¶ 26-31.  Defendant subsequently removed this action to this Court on the basis of

diversity jurisdiction, pursuant to 28 U.S.C. § 1332. *See* Dkt. No. 1. Currently before the Court is Defendant's motion for summary judgment. *See* Dkt. No. 34.

## II. BACKGROUND

In 2014, Plaintiff contacted Defendant to address a water inflow problem in Plaintiff's mine, located in Diana, New York. *See* Dkt. No. 34-1 at ¶ 7. Defendant's principal, Eric Smith ("Smith"), made a site visit in December of 2014. *See id.* at ¶ 9. During the visit, Smith was shown the affected area and Smith noted signs of water infiltration, i.e., clay and rock about knee height above the floor. *See id.* at ¶ 11. During the site visit, Smith viewed all areas of the mine that he believed to be necessary to determine the proper means of addressing Plaintiff's water problem. *See* Dkt. No. 34-9 at 30-31. Following the inspection, Defendant provided Plaintiff with an estimate of costs to stem the water inflow. *See* Dkt. No. 35-2. Subsequently, Plaintiff issued a purchase order based on the estimate. *See* Dkt. No. 34-1 at ¶ 15; Dkt. No. 34-10 at 55; Dkt. No. 35-3. Defendant was hired to provide drilling and grouting services in the mine to stem the flow of water. *See* Dkt. No. 34-1 at ¶ 13. The work was completed in April 2015 without issue and to Plaintiff's satisfaction. *See* Dkt. No. 34-1 at ¶ 12; Dkt. No. 34-10 at 54.

Prior to August 2016, Plaintiff contacted Defendant to perform additional work concerning water inflow in Plaintiff's mine. *See* Dkt. No. 34-1 at ¶ 17; Dkt. No. 34-9 at 54-55. Smith made another site visit and observed that the water intrusion level was higher than at the time of the original visit. *See* Dkt. No. 34-1 at ¶ 17. During the site visit, Smith gathered information from Plaintiff about seepage in the mine and inspected the areas affected by the water inflow. *See* Dkt. No. 34-9 at 55-58. Following the site visit, Defendant issued an estimate. *See* Dkt. No. 34-9 at 58; Dkt. No 35-7. Plaintiff then created a purchase order for the corresponding amount. *See* Dkt. No. 34-1 at ¶ 19; Dkt. No. 35-9. Work began in August 2016. *See* Dkt. No.

34-1 at ¶ 25. However, prior to completion, Plaintiff terminated the project. *See id*. at ¶ 34.

Plaintiff claims that the project was cancelled because after more than 40,000 pounds of

polyurethane was injected in an attempt to stem the water inflow, the inflow of water worsened

substantially. *See* Dkt. No. 35 at ¶ 33. Defendant was never paid for the work performed in

2016. *See* Dkt. No. 34-1 at ¶ 35.

On December 19, 2017, Plaintiff commenced this action in state court, alleging four

causes of action arising from the events described above: breach of contract, negligence, breach

of warranty, and negligent misrepresentation. *See* Dkt. No. 2 at 7-9. Specifically, Plaintiff argues

that it suffered damages as a result of Defendant's failure to properly determine necessary

processes, materials, and methods; failure to perform services in accordance with industry

standards; and by providing non-conforming, defective materials not fit for the particular purpose

identified. *See id*. at 7-9. Further, Plaintiff alleges that it reasonably relied upon false

representations made by Defendant as to the scope and quality of its skill and expertise, as well as

the advisability of the materials and methods used. *See id*. at 9-10.

In its motion for summary judgment, Defendant argues that Plaintiff's claim for negligent

misrepresentation must be dismissed as the parties did not have a relationship that would create a

duty and any of the statements allegedly relied upon by Plaintiff constitute inactionable "puffery."

*See* Dkt. No. 34-2 at 5-7. Further, Defendant urges the dismissal of Plaintiff's breach of contract

claim, arguing that there was no contract between the parties, or in the alternative, Plaintiff was in

breach of the contract and failed to establish that Defendant did not perform its obligations. *See

id*. at 7-10. Finally, Defendant argues that Plaintiff's breach of warranty claim must be dismissed

as there was no contract with which Defendant failed to conform and all materials used by

Defendant were merchantable. *See id*. at 10-12.

# III. DISCUSSION

## A. Summary Judgment Standard

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

## B. Breach of Contract

Defendant claims that it is entitled to summary judgment as to Plaintiff's breach of contract claim. *See* Dkt. No. 34-2 at 7. Specifically, Defendant contests the existence of a contract and argues that, even if the Court finds that a contract existed, Defendant cannot be

4

found liable because Plaintiff failed to perform and failed to establish that Defendant did not perform its obligations under the contract. *See id*. at 9.

Under New York law, a party alleging a breach of contract claim must allege the following elements: (i) the existence of a contract; (ii) adequate performance of the contract by the plaintiff; (iii) breach by the other party; and (iv) damages suffered as a result of the breach. *See Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (citation omitted); *see also Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 357-58 (S.D.N.Y. 2001) (citation omitted). "In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Wolff*, 171 F. Supp. 2d at 358 (citation omitted).

### 1. Existence of a Contract

"In order to adequately allege the existence of an agreement, 'a plaintiff must "plead the provisions of the contract upon which the claim is based."'" *Howell v. American Airlines, Inc.*, No. 05-CV-3628, 2006 WL 3681144, *3 (E.D.N.Y. Dec. 11, 2006) (quoting *Phoenix Four, Inc. v. Strategic Res. Corp.*, No. 05 Civ. 4837(HB), 2006 WL 399396, at *10 (S.D.N.Y. Feb. 21, 2006) (quoting *Window Headquarters, Inc. v. MAI Basic Four, Inc.*, Nos. 91 Civ. 1816 (MBM), 92 Civ. 5283(MBM), 1993 WL 312899, at *3 (S.D.N.Y. Aug. 12, 1993) (quoting *Griffin Bros., Inc. v. Yatto*, 68 A.D.2d 1009, 1009, 415 N.Y.S.2d 114, 114 (3d Dep't 1979)))). "A plaintiff need not attach a copy of the contract to the complaint or quote the contractual provisions verbatim." *Id.* (citing *Window Headquarters*, 1993 WL 312899, at *3 (citing *Mayes v. Local 106, Int'l Union of Operating Eng'rs*, 739 F. Supp. 744, 748 (N.D.N.Y. 1990))). "However, the complaint must at least 'set forth the terms of the agreement upon which liability is predicated . . . by express reference.'" *Id.* (quoting *Phoenix Four*, 2006 WL 399396, at *10; *Chrysler Capital Corp. v. Hilltop Egg Farms, Inc.*, 129 A.D.2d 927, 928, 514 N.Y.S.2d 1002, 1003 (3d Dep't 1987)).

Here, Plaintiff "set forth the substance of [the contract's] essential terms." *Marquardt-Glenn Cor. v. Lumelite Corp.* 11 F.R.D. 175, 177 (S.D.N.Y. 1951). Specifically, Plaintiff alleged:

> In 2016, Plaintiff and Defendant entered into an Agreement whereby Defendant agreed to eliminate the groundwater intrusion at the Mine by identifying, implementing and providing the materials and services Defendant determined necessary to perform the "Hydro Sealing" injection grouting process it determined were necessary in particular areas of the Mine.
>
> . . .
>
> By the Agreement, Defendant agreed to determine what materials were necessary to perform the "Hydro Sealing" injection grouting processes it determined necessary in particular areas in the Mine for the particular purpose of eliminating the groundwater intrusion.
>
> By the Agreement, Defendant agreed to determine what services and means and methods of installation of the recommended materials were necessary to perform [the] "Hydro Sealing" injection grouting processes at the mine for the particular purpose of eliminating the groundwater intrusion.
>
> By the Agreement, Defendant agreed to provide the materials it determined necessary to perform [the] "Hydro Sealing" injection grouting processes at the mine for the particular purpose of eliminating the groundwater intrusion.
>
> By the Agreement, Defendant agreed to provide the services and means and methods of installation of the materials it determined necessary to perform [the] "Hydro Sealing" injection grouting processes at the mine sufficient for the particular purpose of eliminating the groundwater intrusion.

Dkt. No. 2 at ¶¶ 19-24. Plaintiff then alleges, with sufficient specificity, which provisions of the agreement were breached by Defendant. *See id*. at ¶¶ 26-29. Thus, Plaintiff's complaint sufficiently alleges the existence of the contract upon which its claims are based.

Contrary to Defendant's claims, Plaintiff has not admitted that there was no contract, rather Plaintiff admitted that there was no formal writing memorializing the agreement between

the parties.  *See* Dkt. No. 34-8 at 70.  The issue before the Court is whether the apparently oral

agreement between the parties, supplemented by related documentation such as estimates,

purchase orders, and invoices, and when viewed in light of the parties prior dealings and the

performance of work, indicate that the parties entered a binding and enforceable agreement.  In

the alternative, Plaintiff argues that a unilateral contract was formed when Defendant, in receipt

of Plaintiff's purchase order detailing the required work, arrived on-site and began to perform the

requested repairs.  *See* Dkt. No. 35-14 at 7-8.

   "Under New York law, parties are free to enter into a binding contract without

memorializing their agreement in a fully executed document.  This freedom to contract orally

remains even if the parties contemplate a writing to evidence their agreement." *Winston v.*

*Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).  "The parties' expressed

intentions, the words and deeds which constitute objective signs in a given set of circumstances"

are to be considered.  *See R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir.

1984) (citations omitted).  The Second Circuit has provided the following four factors to consider

in making a determination as to the existence of a contract:

> (1) whether there has been an express reservation of the right not to
> be bound in the absence of a writing; (2) whether there has been
> partial performance of the contract; (3) whether all of the terms of
> the alleged contract have been agreed upon; and (4) whether the
> agreement at issue is the type of contract that is usually committed
> to writing.

*Winston*, 77 F.2d at 80.  "These circumstances may be shown by 'oral testimony or by

correspondence or other preliminary or partially complete writings.'" *Id*.  Here, neither party

contends, nor does the record indicate, that there was an express reservation not to be bound

absent a formal written contract.  Thus, the Court will consider the remaining factors.

### a. Partial Performance

"Partial performance under New York law and general contract principles is a significant factor in determining not only the existence of a binding oral agreement but in constructing terms." *DiMario v. Coppola*, 10 F. Supp. 2d 213, 220 (E.D.N.Y. 1998) (citing *Metro-Goldwyn-Mayer, Inc. v. Scheider*, 40 N.Y.2d 1069, 1070-71 (1976)). "'Where the parties have completed their negotiations of what they regard as essential elements, and performance has begun on the good faith understanding that agreement on the unsettled matters will follow, the court will find and enforce a contract . . . ." *Scheider*, 40 N.Y.2d at 1070. "[P]artial performance is an unmistakable signal that one party believes there is a contract . . . ." *R.G. Group, Inc.*, 751 F.2d at 75-76.

Here, it is uncontested that, following reaching the alleged agreement, Defendant began work in the mine in August of 2016. *See* Dkt. No. 34-1 at ¶ 25. Initially, the work was progressing as expected, but some time prior to completion, Plaintiff decided to terminate the grouting project. *See* Dkt. No. 34-9 at 60-61. Partial performance by Defendant supports the conclusion that the parties reached a binding agreement.

### b. Material Terms Left to be Negotiated

The Court must also consider whether there are any material terms that had yet to be negotiated. *See Winston*, 777 F.2d at 82. "Only if essential terms are omitted or indefinitely phrased, will the agreement be unenforceable." *Dimario*, 10 F. Supp. 2d at 221 (citing *Brookhaven Housing Coalition v. Solomon*, 583 F.2d 584, 593 (2d Cir. 1978)) (other citation omitted). "New York will look to industry standards to determine whether a reasonable critical term may be supplied, 'based on proof of an established custom and practice in the industry.'" *DiMario*, 10 F. Supp. 2d at 221 (quoting *Scheider*, 40 N.Y.2d at 1070). "If the contract can be

rendered certain and complete, by reference to something certain, the court will fill in the gaps."

*Scheider*, 40 N.Y.2d at 1071 (citations omitted).

Defendant argues that material terms of the contract had yet to be sufficiently detailed, specifically citing a lack of price and duration terms. *See* Dkt. No. 34-2 at 9.[1]  "[A] price term may be sufficiently definite if the amount can be . . . found within the agreement or ascertained by reference to an extrinsic event, commercial practice or trade usage." *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 483 (1989).  "[W]here the parties have not clearly expressed the duration of a contract, the courts will imply that they intended performance to continue for a reasonable time." *Haines v. New York*, 41 N.Y.2d 769, 772 (1977).

Here, multiple witnesses for Defendant testified that it is impossible to know the length of time and amount of materials required for a grouting job prior to the commencement of work given the uncertain and volatile nature of polyurethane grouting. *See* Dkt. No. 34-7 at 15, 22-24, 44; Dkt. No. 34-9 at 37.  In fact, one of Defendant's witnesses testified that often, in putting together an estimate, there is a question as to the appropriate length of time and amount of materials to bill because "[they] don't really know what [they] are going to [ ] run into . . . ." *See* Dkt. No. 34-7 at 44.  Additionally, Defendant provided Plaintiff with an itemized estimate, detailing the expected price and quantity of materials and labor that Defendant anticipated would be necessary. *See* Dkt. Nos. 35-7.  Accordingly, the Court finds that the agreement between the

---

[1] The Court finds Defendant's argument that the agreement was not sufficiently specific because Plaintiff did not provide Defendant with a formal scope of work unpersuasive.  The record is clear that the parties understood the scope of work to be injection of polyurethane into the mine to address a water inflow problem. *See* Dkt. No. 34-9 at 55-57; Dkt. Nos. 35-6, 35-7, 35-8, 35-9.  Further, Defendant has provided the Court with no authority which requires a formal scope of work for the creation of a contract.

parties was sufficiently specific as to the material terms and that this factor indicates the existence of a contract.

### c. Type of Agreement

Finally, the Court looks to whether the alleged agreement is one that "concerns [ ] complex and substantial business matters where [a written contract is] the norm rather than the exception." *R.G. Group, Inc.*, 751 F.2d at 76. In examining this factor, "[s]tandards and customs of the industry are critical." *DiMario*, 10 F. Supp. 2d at 221 (citation omitted).

Here, the agreement is not of the same complexity as those that have typically been found to necessitate a writing. *See generally Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257 (2d Cir. 1984) (finding a proposed deal involving a four million dollar sale of six companies which were incorporated under the laws of five different countries which had assets of over seventeen million dollars, sales of forty million dollars, and profits of four million dollars must be in writing); *Winston*, 777 F.2d at 83 (finding that an agreement involving payments over several years based on a percentage of earnings should have been in writing given that the parties found the contract substantial enough to re-draft the language). Here, the agreement was a relatively straight-forward service agreement by which Defendant would perform a service – polyurethane grouting of a mine – for Plaintiff in exchange for monetary compensation originally estimated to be approximately $46,000. *See* Dkt. Nos. 35-7, 35-11. Thus, the Court finds that this factor weighs in favor of finding an enforceable agreement. Accordingly, the Court finds that all of the factors weigh in favor of a finding that a binding contract existed.

### d. Definiteness

In the alternative, Defendant argues that Plaintiff's breach of contract claim must be dismissed because the agreement reached was not sufficiently definite to constitute a binding agreement. *See* Dkt. No. 34-2 at 7-9.

The requirement of definiteness states that "[i]f an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." *Cobble Hill Nursing Home, Inc.*, 74 N.Y.2d at 482. "Before rejecting an agreement as indefinite, a court must be satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear." *Id*. at 483.

Here, Defendant argues that the agreement was not sufficiently definite as to the price and duration terms. *See* Dkt. No. 34-2 at 9. As the Court discussed above, the agreement between the parties was sufficiently specific given the nebulous nature of polyurethane grouting.

In light of the testimony of the parties, documentation related to the work at issue, and for the reasons explained above, the Court finds that there remain issues of material fact as to the existence of a binding contract between the parties.

### 2. Plaintiff's Performance Under the Contract

It is not contested that Plaintiff did not pay Defendant for its work on the mine. *See* Dkt. No. 34-1 at ¶ 35. Defendant argues that Plaintiff is precluded from bringing an action for breach of contract because Plaintiff did not adequately perform under the contract, as is required for any breach of contract claim. *See* Dkt. No. 34-2 at 9-10; Dkt. No. 35-14 at 15. However, in its response in opposition to Defendant's motion for summary judgment, Plaintiff alleges the existence of a condition precedent to its duty to perform. *See* Dkt. No. 35-14 at 16. Specifically, Plaintiff claims that Defendant's successful completion of the project under the contract was a condition precedent to Plaintiff's duty to pay. *See id*. at 16-17. Plaintiff argues this condition

precedent is necessarily implied because the final amount owed to Defendant could not be calculated until the work concluded.  *See id*.  Thus, Plaintiff argues, because Defendant never completed performance, its duty to perform never arose.  *See id*.

"Under New York law, the burden is generally on the plaintiff to show [its] own performance and not on the defendant to show nonperformance." *Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410, 2016 WL 11120941, *7 (E.D.N.Y. Mar. 11, 2016) (citing *British American & Eastern Co. v. Wirth Ltd.*, 592 F.2d 75, 78 (2d Cir. 1979)).  "A condition precedent is 'an act or event, other than a lapse of time, which, unless . . . excused, must occur before a duty to perform a promise in the agreement arises.'" *Patel v. Baluchi's Indian Rest.*, No. 08-CV-9985, 2009 WL 2358620, *7 (S.D.N.Y. July 30, 2009) (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995)).  "Conditions can be express or implied.  Express conditions are those agreed to and imposed by the parties themselves.  Implied or constructive conditions are those 'imposed by law to do justice.'" *Oppenheimer & Co.*, 86 N.Y.2d at 690 (quotation omitted). The Second Circuit has held that the determinative factor in the existence of a condition precedent is the intent of the parties.  *See Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 214 (2d Cir. 2002).  "The question of intent [ ] is a question of fact." *Recticel Foam Corp. v. Bay Indus*, 128 Fed. Appx. 798, 799 (2d Cir. 2005) (citation omitted).

Although it is undisputed that Plaintiff did not perform under the contract, a question of fact remains as to whether Plaintiff was exempted from performance due to the existence of a condition precedent.  In its reply papers, Defendant does not contest the existence of a condition precedent.  *See* Dkt. No. 36.  Thus, a question remains as to whether there was an express condition precedent agreed upon by the parties.  Moreover, in prior dealings Defendant did not receive payment until the water inflow was successfully remedied.  *See* Dkt. No. 34-1 at ¶ 15.

Thus, there is a question as whether an implied condition precedent existed in the instant agreement.

### 3. Defendant's Performance Under the Contract

Finally, Defendant argues that summary judgment is appropriate as to the breach of contract claim because Plaintiff cannot establish that Defendant did not perform its obligations under the contract. *See* Dkt. No. 34-2 at 10.

"Breach of contract occurs when a party fails to perform its contractual duty." *Commerce Funding Corp. v. Comprehensive Habilitation Servs.*, No. 01-CV-3796, 2005 WL 447377, *14 (S.D.N.Y. Feb. 24, 2005) (citing Restatement (Second) of Contracts § 235(2)). "Material breach of a contract occurs when a party's non-performance goes to the root of the agreement and is so substantial that it defeats the purpose of the contract." *Id.* (citing *Frank Felix Assocs. v. Austin Drugs*, 111 F.3d 284 (2d Cir. 1997), *corrected op. reported at*, No. 96 Civ. 7604, 1997 U.S. App. LEXIS 19798, *14 (2d Cir. Apr. 10, 1997). "Under New York law, a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007) (citing *Hadden v. Consol. Edison Co. of N.Y.*, 34 N.Y.2d 88, 96 (1974)). In other words, "[a] party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract." *Frank Felix Assocs., Ltd.*, 111 F.3d at 289 (citing *Babylon Assocs. v. County of Suffolk*, 101 A.D.2d 207, 215 (2d Dep't 1984)). "[I]n most cases, the question of materiality of breach is a mixed question of fact and law [ ] and thus is not properly disposed of by summary judgment." *Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp. 2d 283, 295-96 (S.D.N.Y. 2005) (citing *Manhattan Life Ins. Co. v.*

*Prussian Life Ins. Co.*, 296 F. 39, 42 (2d Cir. 1924); *F. Garofalo Elec. Co., Inc. v. New York*

*University*, 300 A.D.2d 186, 189 (1st Dep't 2002)) (other citations omitted). "The issue of

whether a party has substantially performed is usually a question of fact and should be decided as

a matter of law only where the inferences are certain." *Merrill Lynch*, 500 F.3d at 186 (citing

*Anderson Clayton & Co. v. Alanthus Corp.*, 91 A.D.2d 985 (2d Dep't 1983)).

Here, it is undisputed that Defendant was hired to provide drilling and grouting services to

stem the flow of water in Plaintiff's mine. *See* Dkt. No. 34-1 at ¶ 13. It is also clear that, at the

time that Plaintiff terminated the contract, the water inflow had not been remedied. *See id*. at ¶

34. However, Defendant claims that it was in the process of remedying the water inflow when

Plaintiff abruptly terminated the contract. *See id*. Contrastingly, Plaintiff claims that it was

justified in terminating the agreement as Defendant had not only failed to stem the water inflow,

but made the inflow worse, after weeks of work and that materials had been invested over the

estimate price. *See* Dkt. No. 35 at ¶ 33. At present, there remain questions of material fact as to

whether Defendant's failure to stem the water inflow constituted a breach at the time Plaintiff

terminated the contract. Accordingly, the Court denies Defendant's motion for summary

judgment on this ground.

## C.    Negligent Misrepresentation

In its motion for summary judgment, Defendant claims that it is entitled to summary

judgment as to Plaintiff's negligent misrepresentation claim, arguing that the relationship between

Plaintiff and Defendant was not sufficiently close to create a duty between the parties. *See* Dkt.

No. 34-2 at 6. Further, Defendant claims that the statements supposedly relied upon by Plaintiff

would, at worst, constitute puffery and, thus, are not actionable for negligent misrepresentation.

*See id*. at 6-7. In its response, Plaintiff alleges that, in addition to the representation included in

the complaint, the estimate provided by Defendant following a site visit constitutes another misrepresentation giving rise to liability.[2] *See* Dkt. No. 35-14 at 18. The alleged representations at issue here are that Defendant (1) told Plaintiff that the personnel assigned the job were "the two with the most experience in the world," (2) included an advertisement on its website making representations about the amount of water they could stop, and (3) represented on its website that Defendant had an in-house chemist, geologist, and civil engineer to assist in the development of solutions for clients. *See* Dkt. No. 2 at ¶ 47.

"To prevail on a claim of negligent misrepresentation under New York law, a plaintiff must show '(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.'" *Crawford v. Franklin Credit Management Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (quoting *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007)). The New York Court of Appeals has ruled that "before a party may recover in tort for pecuniary loss sustained as a result of another's negligent misrepresentations there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity." *Parrott v. Coopers & Lybrand, L.L.P.*, 95 N.Y.2d 479, 483 (2000). "In order to recover under a negligent misrepresentation theory, plaintiff must allege a

---

[2] The Court notes that although the Second Circuit has not decided whether the heightened pleading requirements for allegations of fraud pursuant to Rule 9(b) apply to negligent representation claims, *see Eternity Global Master Fund Ltd v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d, 168, 188 (2d Cir. 2004), courts in this Circuit have applied the Rule 9(b) heightened pleading standards to claims such as this. *See Richards v. Johnson & Johnson, Inc.*, No. 5:17-CV-178, 2018 WL 2976002, *7 n.9 (N.D.N.Y. June 12, 2018) (collecting cases). Thus, Plaintiff's claims that it was not required to plead with particularity the alleged negligent misrepresentation may not necessarily be accurate. *See* Dkt. No. 35-14 at 18. However, because the allegations in Plaintiff's complaint survive summary judgment, the Court need not decide whether the heightened pleading standard applies.

special relationship that 'suggest[s] a closer degree of trust and reliance than that of the ordinary buyer and seller.'" *Patell Indus. Mach. Co., Inc. v. Toyoda Machinery U.S.A., Inc.*, 880 F. Supp. 96, 99 (N.D.N.Y. 1995) (quotations and other citations omitted).

### 1. Special Relationship

"'[L]iability in the commercial context is "imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified."'" *Crawford*, 758 F.3d at 490 (quotations omitted). To determine whether a special relationship existed for purposes of a negligent misrepresentation claim, a court must examine the following factors:

> "[1] whether the person making the representation held or appeared to hold unique or special expertise; [2] whether a special relationship of trust or confidence existed between the parties; and [3] whether the speaker was aware of the use to which the information would be put and supplied it for that purpose."

*Lenco Diagnostic Labs., Inc. v. McKinley Scientific, Inc.*, No. 15-CV-1435, 2018 WL 7932085, *9-10 (E.D.N.Y. Aug., 15, 2018) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257 (1996)).

Here, Defendant has acknowledged that individuals who work in the mining business are often unfamiliar with the process of polyurethane grouting. *See* Dkt. No. 34-9 at 42-43, 69, 74-75. Contrastingly, Defendant's principals had over seventy years of experience in polyurethane grouting. *See* Dkt. No. 35-13. Thus, Defendant held, or at the very least appeared to hold, unique or special expertise. Additionally, the parties previously contracted to remedy a water inflow problem in Plaintiff's mine. *See* Dkt. No. 34-1 at ¶ 12. In that instance, Defendant followed the same procedure – performed a site visit and inspection, issued an estimate, received a purchase order from Plaintiff, commenced work – and succeeded in stemming the water inflow. *See id*. at ¶¶ 13-15. Thus, in light of the previous relationship between the parties, the Court finds that a

16

special relationship of trust or confidence existed. Finally, there remain questions of material fact as to the duty that existed between the parties. Defendant has not addressed Plaintiff's allegation that it assured Plaintiff that the personnel assigned to the project were the "best in the world." If such a representation was in fact made, then there would be a question of fact regarding whether Defendant was aware of the use to which the information would be put and whether Defendant supplied the information for that purpose.

Accordingly, the Court finds that there remain issues of material fact as to whether the relationship between the parties gave rise to a duty on the part of Defendant.

### 2. Puffery

In the alternative, Defendant argues that the statements allegedly relied upon by Plaintiff constitute inactionable puffery. *See* Dkt. No. 34-2 at 6-7. "It is well established that conclusory representations or those that constitute 'puffery,' opinions as to value, or future expectations cannot form the basis of a claim for negligent misrepresentation." *Sotheby's Fin. Servs. v. Baran*, 107 Fed. Appx. 235, 238 (2d Cir. 2004) (citations omitted).

As discussed, Plaintiff alleges that Defendant (1) told Plaintiff that the personnel assigned the job were "the two with the most experience in the world," (2) included an advertisement making representations about the amount of water they could stop, and (3) represented on its website that Defendant had an in-house chemist, geologist, and civil engineer to assist in the development of solutions for clients. *See* Dkt. No. 2 at ¶ 47. While some of the alleged representations may meet the definition of puffery, others are factual representations. *See Entity Global Master Fund Ltd.*, 375 F.3d at 187-88. The representations, if they were made and are proven to be false and material, could support a claim of negligent misrepresentation. At present, Defendant has not eliminated all questions of fact as to the representations made to Plaintiff.

17

Thus, a question of material fact remains. Accordingly, Defendant's motion for summary judgment as to Plaintiff's negligent misrepresentation claim must be denied.

**D.    Breach of Warranty**

In its complaint, Plaintiff alleges that the materials provided by Defendant (1) were defective, (2) were not merchantable, (3) did not conform to the description of the goods in the agreement, (4) were not fit for the particular purpose intended and identified, and (5) otherwise failed to meet the implied and express warranties provided by Defendant. *See* Dkt. No. 35-14 at 21. In its motion for summary judgment, Defendant argues that the Court must dismiss Plaintiff's breach of warranty claim as there was no contract specifying the grade of materials to be used and all materials used exceeded the industry standard.[3] *See* Dkt. No. 34-2 at 10.

*1. Implied Warranty of Merchantability*

"'The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection.'" *In re Lyman Good Dietary Supplements Litig.*, No. 17-CV-8047, 2018 WL 3733949, *23 (S.D.N.Y. Aug. 6, 2018) (quoting *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013)). Therefore, "'[t]o establish that a product is defective for the purposes of a breach of implied warranty of merchantability claim, a plaintiff must show that the product was not reasonably fit for its intended purpose.'" *Humphrey v. Diamant Boart, Inc.*, 556 F. Supp. 2d 167, 182-83 (E.D.N.Y. 2008) (citing *Wojcik v. Empire Forklift, Inc.*, 14 A.D.3d 63 (3d Dep't 2004)). "In determining whether a product is unmerchantable in this respect, 'the . . . inquiry focuses on the expectations for the performance of the product when used in the customary, usual, and

---

[3] Defendant has not sought summary judgment as to Plaintiff's final allegation – failure to meet implied and express warranties provided by Defendant – and, therefore, that claim survives summary judgment.

reasonably foreseeable manners.'" *Brazier v. Hasbro, Inc.*, No. 99-CV-11258, 2004 WL 515536, *13 (S.D.N.Y. Mar. 16, 2004) (quoting *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258-59 (1995)). "'A warranty of fitness for ordinary purposes does not mean that the product will fulfill [a] buyer's every expectation,'" only "that the warranty 'provides for a minimal level of quality.'" *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, 399 Fed. Appx. 637, 640 (2d Cir. 2010) (quoting *Denny v. Ford Motor Co.*, 87 N.Y.2d 248 (1995)).

Here, there remains a question of material fact as to whether the materials were defective. In support of its argument that the materials used were not defective and were marketable, Defendant relies upon an affidavit submitted by Defendant's President, Smith. *See* Dkt. No. 34-2 at 11-12. Plaintiff asserts that both the opinion and the reports underlying the opinion are inadmissible for a variety of reasons and, thus, should be disregarded. *See* Dkt. No. 35-14 at 22. First, Plaintiff argues that the opinion, provided in the form of an affidavit in support of summary judgment by Smith, violates Rule 56(c) of the Federal Rules of Civil Procedure. *See id*. at 22; Dkt. No. 34-11. Additionally, Plaintiff claims that the opinion provided by Defendant is inadmissible under the Federal Rules of Evidence. *See* Dkt. No. 35-14 at 23-24. Specifically, Plaintiff argues that the opinion is improper and the underlying information is inadmissible hearsay. *See id*. at 23-25.

"Because the purpose of summary judgment is to weed out cases in which 'there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law,' it is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) (internal quotation omitted). "The principles governing admissibility of evidence do not change on a motion for summary judgment." *Id*. Rule 56 of the Federal Rules of Civil Procedure requires that

"affidavit[s] or declarations in support of or against summary judgment must be made on personal knowledge. . . ."

Initially, the Court notes that Smith's affidavit is not based on personal knowledge, rather it is based on information provided to the affiant by another organization. *See* Dkt. No. 34-11 at ¶¶ 9, 11-12. Thus, it does not comply with the Federal Rules of Civil Procedure regarding affidavits in support of summary judgment. *See* Fed. R. Civ. Proc. 56(c). In the alternative, Plaintiff further asserts Smith's opinion as to the merchantability of the materials is inadmissible under the Federal Rules of Evidence. *See* Dkt. No. 35-14 at 23-24. Specifically, Plaintiff claims that the opinion provided by Defendant is not admissible as a lay opinion because such an opinion would require specialized knowledge regarding the chemical composition of polyurethane grout. *See* Dkt. No. 35-14 at 23-24. Moreover, Plaintiff argues that the opinion is not admissible as an expert opinion because Defendant has failed to properly qualify the affiant as an expert witness. *See id*.

Rule 701 of the Federal Rules of Evidence defines a lay opinion as that which is "rationally based on the witness's perception; helpful to clearly understanding the witness's testimony or to determining a fact in issue; and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Contrastingly, an expert opinion is given by "[a] witness [ ] qualified as an expert by knowledge, skill, experience, training, or education" and relates to a matter that requires specialized knowledge. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993).

Here, Smith opined that the materials at issue were merchantable and fit for the particular purpose for which they were used. *See* Dkt. No. 34-11 at ¶¶ 11-12, 15-16. Undoubtedly, an analysis as to the chemical composition of material such as polyurethane grout requires a degree

20

of specialized knowledge.  Further, as previously discussed, the information relied upon by Smith was not information that was rationally based on the witness' perception.  Thus, Smith's opinion could not qualify as a lay opinion.  Additionally, although it is unclear whether Defendant proffers Smith as an expert, Smith's opinion could not qualify as an expert opinion.  While Smith testified that he has had almost three decades of experience in ground and water control with the use of polyurethane, the record does not indicate that his experience includes analysis of the chemical composition of polyurethane grout.  *See* Dkt. No. 34-9 at 15-17.  Thus, Smith could not qualify as an expert in regards to the composition and defectiveness of polyurethane grout.  Because Smith is not an expert, the data underlying his opinion is inadmissible hearsay. Defendant relies upon test results purportedly provided to Defendant by Huntsman, the manufacturer of the polyurethane grout.  *See* Dkt. No. 34-2 at 11-12.  Huntsman provided certificates of analysis for the materials at issue which provide that the materials tested conform to Huntsman's specifications.  *See* Dkt. No. 34-1 at ¶ 25; Dkt. No. 34-11 at 5-12.

"'Hearsay' is defined as an out-of-court statement 'offered in evidence to prove the truth of the matter asserted in the statement.'"  *United States v. Preldakaj*, 489 Fed. Appx. 507, 507-08 (2d Cir. 2012).  Hearsay is not admissible unless it falls under one of the recognized exemptions or exceptions.  *See* Fed. R. Evid. 802.

Here, Defendant attempts to proffer reports based on testing conducted by Huntsman in order to show that the materials in question were, in fact, merchantable.  *See* Dkt. No. 34-2 at 12-13.  Absent an applicable exception, the reports constitute inadmissible hearsay.  As Plaintiff correctly notes, the reports would not be admissible as a record of regularly conducted activity. Such a record of a condition or opinion is admissible if:

> (A) the record was made at or near the time by – or from information transmitted by – someone with knowledge; (B) the

record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by certification . . .; and (E) the opponent does not show that the source of information or the method of circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). Here, the record was obtained in anticipation of litigation and has not been certified. *See* Dkt. No. 34-2 at 12; Dkt. No. 34-11. Thus, the records would not be admissible under this exception. Because there are no other applicable exceptions, the records are inadmissible and the Court will not consider them in deciding the instant motion.

The Court finds that Defendant has failed to eliminate all questions of material fact as to the merchantability of the materials at issue. Accordingly, Defendant's motion must be denied on this ground.

### 2. *Implied Warrant of Fitness for a Particular Purpose*

"Under New York law, '[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods,' there is an implied warranty that 'the goods shall be fit for such purpose.'" *In re Lyman Good Dietary Suppements*, 2018 WL 3733949, at *25 (quotation omitted). "[T]he implied warranty of fitness for a particular purpose does not arise in every consumer sale, but only when a seller knows or has reason to know the particular purpose for which a buyer requires goods, and also knows or should know that the buyer is relying on his special knowledge." *Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238, 249 (2d Cir. 1986).

In its complaint, Plaintiff alleges that Defendant provided defective materials that were not fit for the particular purpose of eliminating groundwater intrusions. *See* Dkt. No. 2 at ¶ 28. In

its motion for summary judgment, Defendant summarily states that the record is void of evidence that the materials used were not reasonably fit for its intended purpose. *See* Dkt. No. 34-2 at 12. Defendant's argument, absent additional information, is insufficient to justify summary judgment. As Plaintiff notes, there remains a question of material fact as to whether the polyurethane grout was fit for the purpose of eliminating groundwater intrusions. Accordingly, the Court denies Defendant's motion for summary judgment on this ground.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 34) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 8, 2019
Albany, New York

Mae A. D'Agostino
U.S. District Judge